Norman SILVERSTEIN,
Petitioner-Appellant,

v.

Robert HENDERSON,
Respondent-Appellee.

No. 535, Docket 82–2028.

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1982.

Decided April 12, 1983.

Michael Young, New York City, for petitioner-appellant.

George C. Perry, Jr., Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Norman Silverstein appeals from a January 6, 1982, order of Judge Stewart in the Southern District of New York dismissing his petition for a writ of habeas corpus. Silverstein is imprisoned in the New York State correction facility 'at Auburn, serving a nine-to-eighteen year sentence for armed robbery. The heart of his claim is that he was incompetent to stand trial and that his guilty plea was thus constitutionally void. The district court held, however, that relief on this claim was barred because Silverstein had neglected to raise the issue on his direct appeal. We reverse and direct that the writ be issued.

I.

Silverstein is, allegedly, retarded and illiterate. He has an I.Q. of 74 and, according to one of his doctors, the mental age of a seven-year-old. He has not developed intellectually beyond the second grade level. He has a long institutional history, having been committed to Rockland State Hospital three times and held for observation at least once at Bellevue and Mid-Hudson State Hospitals. He has been diagnosed as possibly schizophrenic.[1]

In 1976, Silverstein was arrested and indicted in Bronx County on several charges growing out of three "gunpoint" robberies allegedly committed with an accomplice. He was released on bail, defaulted and was arrested again on March 4, 1977.

One month later, about April 6, 1977, pursuant to court order, Silverstein was examined by two psychiatrists. Both agreed he was incompetent to stand trial. On April 12th Justice Goldfluss, of the New York Supreme Court in Bronx County, accepted the psychiatrists' report. The court stated for the record, "having examined such .... report, .... it now appears to my satisfaction that the defendant as a result

---

1. Because no hearing into Silverstein's competence has ever been held, the facts concerning Silverstein's competence have never been established. These allegations, the precise details of which we do not rely on in reaching our decision, are, in any event, not controverted by the state on this appeal.

of the mental disease or defect lacks capacity to understand the proceedings against him or to assist in his defense." Accordingly, the court ordered Silverstein detained at Bellevue, pending transfer by the State Department of Mental Hygiene.

One week later, on April 19th, the Mid-Hudson Psychiatric Center informed the Bronx County district attorney that a third psychiatrist had found Silverstein competent to stand trial, allegedly on the basis of one fifteen-minute interview. In proceedings on May 20th, Justice Goldfluss accepted this third psychiatric report. A few moments later, per an agreement with the Bronx County district attorney, Silverstein pled guilty to one count of robbery in the first degree, armed robbery, under N.Y. Penal Law § 160.15(2) (McKinney 1975). All remaining charges were dropped. Neither the court nor Silverstein's counsel suggested that the disagreement between the three psychiatrists be resolved at a hearing, as required by N.Y.Crim.Proc.Law § 730.-30(4) (McKinney 1971).[2] Indeed, no hearing into Silverstein's competence to stand trial or to make a plea bargain was ever held.

The sentencing proceeding on June 21, 1977, again demonstrated Justice Goldfluss' knowledge that Silverstein "has had without question a psychiatric history," including a series of institutionalizations. The court expressed its "feeling that this defendant has a mental problem but the community must be protected against a defendant who [is] . . . a dangerous person and I am [,] in sentencing this defendant [,] making a specific recommendation . . . that [he] receive[ ] psychiatric care. In my opinion it is essential because . . . someday he will be discharged [and] we must make every effort to see that he is not discharged in the same mental manner in which he goes in." The court sentenced Silverstein to nine to eighteen years in prison.

Silverstein appealed his conviction. The psychiatric report finding him incompetent to stand trial apparently did not become part of the record.[3] Appellate counsel, who had not represented the defendant at trial, was allegedly never made aware of the conflicting psychiatric opinion concerning Silverstein's competence. In any event, appellate counsel failed to urge incompetence as a ground for vacating the conviction. Counsel failed to argue that the trial court had not complied with the procedural requirements of § 730.30 for determining competence. Counsel appealed only on the ground that the sentence was excessive in light of the defendant's diminished mental capacity and his lack of intent to harm his victims. The Appellate Division affirmed without opinion, 65 A.D.2d 679, 409 N.Y. S.2d 324 (1978), and leave to appeal to the Court of Appeals was denied (Nov. 28, 1978).

On September 20, 1980, Silverstein, acting *pro se,* commenced the series of proceedings that culminated in this appeal. He petitioned the New York Supreme

---

**2.** Section 730.30(4) requires a hearing on competence whenever the examining psychiatrists are not of unanimous opinion. Alternatively, on the theory that the two-week period between the second examination stand apart as an independent inquiry into defendant's state of mind, § 730.20 requires the court to seek the opinion of *two* psychiatrists. Thus, however the situation is viewed, Silverstein's competence was not determined in accordance with Article 730.

**3.** The record establishes only that the third psychiatric report, finding Silverstein competent to stand trial, became part of the record on Silverstein's direct appeal to the New York Appellate Division. In its "Affirmation in Opposition" to Silverstein's collateral attack in state court on his conviction, the state argued that "with regard to the allegation that he was incompetent to stand trial, the lower court at the plea proceedings contained a psychiatric report finding defendant competent. Since this report was part of the record below and since defendant's appellate counsel received a copy of it . . . defendant could have pursued this issue on direct appeal." This argument implies that the first two reports finding Silverstein incompetent did not become part of the record on appeal and were not provided to Silverstein's appellate counsel. Since our resolution of this case makes it unnecessary to undertake the "cause and prejudice" analysis of *Wainwright v. Sykes,* 433 U.S. 72, 89, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977), we find it unnecessary to remand for a hearing to determine why appellate counsel was never apprised of all the facts.

Court, Bronx County, under N.Y.Crim. Proc.Law § 440.10 (McKinney 1971) to vacate his conviction. He argued, *inter alia,* that he had never been aware of his right to a hearing on competence.[4] In any event, he argued, "petitioner although an adult is no more than a seven year old child incapable of understanding" his constitutional rights. Thus, "petitioner[,] an illiterate with the mentality of a seven year old[,] waved [sic] no such rights and [neither] counsel nor court had any right to wave [sic] his rights."

The state argued in response that Silverstein's petition should be dismissed under § 440.10(2)(c), which requires denial of relief where the grounds for setting aside the conviction could have been raised on direct appeal but were not. The state argued specifically that because appellate counsel had been provided with a copy of the psychiatric report finding the defendant competent, counsel could have raised on appeal the question of defendant's competence to stand trial.[5]

Justice Goldfluss, who had first found defendant incompetent, then competent, and then accepted the guilty plea, also heard the § 440.10 motion to set aside the conviction. The court's one-sentence opinion dismissing the petition tacitly rejected the state's procedural default argument, resting the dismissal instead on the factually erroneous ground that "[t]he issues presented by the defendant have already been determined by the Appellate Division."

On December 29, 1980, Silverstein, again acting *pro se,* filed his second § 440.10 petition. Silverstein reiterated his claims that he had been incompetent to stand trial and that he had been denied his right to a proper determination of his competence under N.Y.Crim.Proc.Law art. 730 (McKinney 1971). Silverstein also complained that counsel had failed to follow his suggestions to contest on appeal his competence to stand trial.[6]

The state filed no opposing papers. Justice Goldfluss dismissed the petition on the ground that it contained "nothing new or novel that hasn't been brought to the attention of either this court or the Appellate Division." The court made explicit its earlier implicit holding that the defendant's mental capacity had been "clearly brought to the attention of the Appellate Division."

On January 8, 1981, Silverstein filed a *pro se* petition for a writ of habeas corpus in the District Court for the Southern District of New York. He subsequently retained counsel, who filed supporting papers. Silverstein claimed five grounds for relief: First, that the denial of a competency hearing and the acceptance of his guilty plea when he was incompetent to stand trial deprived him of due process; second, that the court improperly accepted his plea without determining whether he had committed all the elements of the crime; third, that he had been deprived of effective assistance of counsel on appeal and at trial; fourth, that by pleading guilty he had unknowingly waived his constitutional rights to confrontation, trial by jury, etc.; and fifth, that his sentence had been based upon misrepresentations in his presentence report.[7] The district court refused to consider the fifth claim, which had not been raised as a constitutional claim in state proceedings. The court found that the remaining four claims had been exhausted, and this finding is not disputed on appeal.

The state argued that *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d

---

4. Silverstein also argued (1) that the trial court had accepted his plea without determining whether he had committed all the elements of the crime and whether he understood all the rights he was waiving and (2) that he had received ineffective assistance of trial counsel.

5. *See supra* note 3.

6. In addition to the grounds alleged in the earlier petition, Silverstein also argued that he had been deprived of effective assistance of counsel on appeal and that his trial counsel had not informed him that he could testify before the grand jury in hopes of obtaining a "no bill."

7. Our resolution of the competence claim makes discussion of the remaining claims unnecessary.

594 (1977), bars the federal court from reaching the merits of these claims, because the state court had denied relief on an independent and adequate state procedural ground—Silverstein's failure to raise the issues on direct appeal. In addressing this argument, the district court noted that Justice Goldfluss' express reason for denying relief—that the issues had already been determined on direct appeal—was erroneous. To determine the state court's "precise *ratio decidendi*" for denying relief, the district court looked to the papers filed by the state in the first § 440.10 proceeding. As noted above, the state had argued that Silverstein was guilty of procedural default under N.Y. Crim.Proc.Law § 440.10(2)(c) in failing to raise the issues on direct appeal. On this basis, the district court concluded that the state court must have been "thinking along procedural lines," and that this procedural ruling barred federal consideration of Silverstein's claims.[8]

## II.

Here too the state urges that we may not reach the merits, because this once *pro se* petitioner has not successfully wound his way through the labyrinthine procedural requirements surrounding federal habeas relief. We disagree.

The state argues, somewhat mysteriously, that the district court "blatantly ignored the Supreme Court's interdict" by "outright refus[ing] to adhere to the doctrine of *Rose [v. Lundy]*," 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a case decided three months *after* the district court filed its decision. *Rose v. Lundy* requires the district courts to dismiss any habeas petition containing both exhausted and unexhausted claims; after such a dismissal, the petition-

er would be free to strike from his papers all references to the unexhausted claims and to resubmit the petition to the federal court. However, following this Circuit's pre-*Rose* procedure, the district court simply refused to consider in any way the unexhausted claim, while going on to pass on the remaining grounds for relief.

■ We are confident that had *Rose* been the law, the district court would have required either the refiling of an amended petition or the substantial equivalent. However, because the state "failed" to raise the *Rose* issue before the district court,[9] the district court did not follow the precise dismissal litany. And thus the state now urges that we vacate the opinion below and remand the case so that the district court can formally dismiss the petition, Silverstein can then amend and refile his petition, the district court may then reconsider the amended petition and come to the same decision and send the case back to us.

We see no merit in this proposal. We hold that the *Rose* requirements were satisfied when the petitioner stated in his brief, in oral argument, and in a letter to this court that he was withdrawing his unexhausted claim and all references to the elements of that claim in his briefs and in his habeas petition. See *Rock v. Coombe*, 694 F.2d 908 (2d Cir.1982), *petition for cert. denied*, —— U.S. ——, 103 S.Ct. 1773, 76 L.Ed.2d 345 (1983); *Guthrie v. Warden*, 683 F.2d 820, 821 n. 1 (4th Cir.1982).

In *Rock v. Coombe, supra*, this court rejected a suggestion similar to the state's proposal where the district court, in a decision rendered after the Supreme Court decided *Rose*, had "ignored the dictates of

---

8. Although the court held that the ineffective assistance of counsel claim based on failure to seek suppression of an involuntary confession was not barred by procedural default, it concluded that this claim was without merit.

9. We, of course, place no weight on the state's failure to raise the issue of the total exhaustion requirement in the district court. For the state executive branch may not ordinarily have the power to waive the deference due state courts. Nevertheless, we note that exhaustion is not

jurisdictional; rather, it reflects more flexible principles of comity. *Darr v. Burford*, 339 U.S. 200, 203–11, 70 S.Ct. 587, 589–94, 94 L.Ed. 761 (1950); *United States ex rel. Johnson v. Vincent*, 507 F.2d 1309, 1312 (2d Cir.1974), *cert. denied*, 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975); *accord, Ballard v. Maggio*, 544 F.2d 1247, 1249 (5th Cir.1977); *United States ex rel. Graham v. Mancusi*, 457 F.2d 463, 468 (2d Cir. 1972).

*Rose v. Lundy* and dealt with the exhausted claims on the merits," *id.* at 914. In this situation, we permitted the petitioner to comply with *Rose* by withdrawing and abandoning his unexhausted claims at the appellate level. We saw "no reason to require the court to go through the jejune exercise of dismissing the petition and requiring that a new piece of paper be filed." *Id.* Any other result would have construed the petitioner's right to narrow his petition in order to submit only his exhausted claim "as a right encased in rigid formality." *Id.*

We believe that this appeal from a decision issued prior to *Rose* presents, if anything, an even stronger case for applying the total exhaustion rule by requiring the petitioner to withdraw his unexhausted claims at the appellate level.[10] Since Silverstein's exhausted and unexhausted claims are plainly in no way intertwined, *see Rose, supra* 102 S.Ct. at 1204, a more formal retroactive application of *Rose* would neither serve the purposes underlying the total exhaustion rule nor so "encourage state prisoners to seek full relief first from the state courts," *id.* 102 S.Ct. at 1203, as to justify an otherwise pointless and burdensome exercise in paper shuffling.

### III.

■ The State next argues that Silverstein's failure to challenge his competence on his direct appeal constitutes a waiver of his constitutional rights under N.Y.Crim. Proc.Law § 440.10(2)(c). The state court allegedly denied collateral relief after finding waiver under the statute, and, the argument goes, this finding constitutes an independent and adequate state ground immune from attack in a federal court. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Forman v. Smith,* 633 F.2d 634 (2d Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981). We cannot agree. First, the New York courts could not constitutionally apply a procedural default rule to a possibly incompetent defendant. Second, the state's argument rests on an erroneous interpretation of New York criminal procedure. Finally, no New York court found Silverstein guilty of procedural default.

### A.

In *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court expressly denied that a habeas petitioner could have waived his right to a competency hearing by failing to request one at trial. *Id.* at 384, 86 S.Ct. at 841. For "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id.; see Suggs v. LaVallee,* 570 F.2d 1092, 1116–17 (2d Cir.), *cert. denied,* 439 U.S. 915, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978); *United States ex rel. Roth v. Zelker,* 455 F.2d 1105, 1108 (2d Cir.), *cert. denied,* 408 U.S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340 (1972). Since the trial court in *Pate* had been alerted to the doubts as to the defendant's sanity, the Supreme Court rejected the claim that "no duty rested upon [the trial court] to order a hearing *sua sponte.*" 383 U.S. at 378, 86 S.Ct. at 838.

---

**10.** We note that the Courts of Appeals are apparently divided on the question of *Rose's* retroactive application. *Compare Bowen v. Tennessee,* 698 F.2d 241 (6th Cir.1983) (en banc) (applying *Rose v. Lundy* retroactively and remanding to the district court with instructions to dismiss), *and Jones v. Hess,* 681 F.2d 688, 695 (10th Cir.1982) (applying *Rose v. Lundy* retroactively to require dismissal where the unexhausted claims were "arguably intertwined" with the exhausted claims), *with Guthrie v. Warden,* 683 F.2d 820, 821 n. 1 (4th Cir.1982) (declining to give *Rose v. Lundy* rigid retroactive application where petitioner had abandoned his unexhausted claims early in the case and where petitioner would simply refile amended complaint if dismissed).

The Supreme Court's application of *Rose* to, and summary treatment of, three habeas cases pending on petition for certiorari when *Rose* was decided, *Bergman v. Burton,* 456 U.S. 953, 102 S.Ct. 2026, 72 L.Ed.2d 478 (1982); *Rodriquez v. Harris,* 455 U.S. 997, 102 S.Ct. 1627, 71 L.Ed.2d 858 (1982); *Duckworth v. Cowell,* 455 U.S. 996, 102 S.Ct. 1626, 71 L.Ed.2d 858 (1982), while not entirely illuminating, do not appear to indicate that a petitioner cannot effectively withdraw an unexhausted claim in order to avoid dismissal of the petition.

Indeed, the trial court's failure to inquire into defendant's competence on its own motion "deprived [the petitioner] of his constitutional right to a fair trial." *Id.* at 385, 86 S.Ct. at 842.

The question presented here is whether the waiver rule of *Wainwright v. Sykes, supra,* and *Forman v. Smith, supra,* applies to the right recognized by *Pate v. Robinson.* We conclude that it does not. *Wainwright* was premised on the defendant's violation of a constitutionally sound state procedural rule placing solely on the defendant the burden of contemporaneously objecting to the introduction of evidence. In contrast to *Pate, Wainwright* expressly rejected an argument that the Constitution both barred the state from applying such a rule and required the state to place the burden of objecting to the introduction of an involuntary confession on the trial court. *Wainwright, supra,* 433 U.S. at 85–87, 97 S.Ct. at 2505–06. The Court held that under the Constitution the defendant merely had the right "at some stage in the proceedings *to object* to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness." *Wainwright, supra,* at 86, 97 S.Ct. at 2506 (emphasis in original) (quoting *Jackson v. Denno, supra* [378 U.S. 368] at 376–77 [84 S.Ct. 1774, 1781, 12 L.Ed.2d 908].) As to such a right, the state was entitled to treat the failure to object as a waiver.

However, *Wainwright*'s waiver rule cannot apply when the basis for attacking the conviction is that the defendant is incompetent to stand trial, and thus incompetent to "waive" his rights. *Zapata v. Estelle,* 588 F.2d 1017, 1021 (5th Cir.1979). Thus, when the trial court neglects its duty to conduct a

hearing on competence; the defendant's failure to object or to take an appeal on the issue will not bar collateral attack. *Hayes v. United States,* 468 F.Supp. 179, 184 (S.D. Tex.1979).

### B.

We do not believe that the New York courts would reach a contrary result. For New York law provides the procedural protection *Pate* requires. The New York Court of Appeals has held that when the demeanor of the defendant or other evidence raises doubt as to his competence to stand trial, it is the trial court's duty to order a hearing *sua sponte. People v. Gonzalez,* 20 N.Y.2d 289, 293, 282 N.Y.S.2d 538, 229 N.E.2d 220 (1967), *reaffirmed in People v. Armlin,* 37 N.Y.2d 167, 171, 371 N.Y.S.2d 691, 332 N.E.2d 870 (1975); *see People v. Smyth,* 3 N.Y.2d 184, 187, 164 N.Y.S.2d 737, 143 N.E.2d 922 (1957). And New York Criminal Procedure Law § 730.30(4) specifically requires the court to order a hearing on its own motion when, as here, the examining psychiatrists disagree on the defendant's competence. *See also People v. Bradt,* 77 A.D.2d 795, 430 N.Y.S.2d 742 (1980) (error not to order hearing where reports finding defendant competent were conclusory and where evidence suggested incompetence); *People v. Candella,* 49 A.D.2d 800, 801, 373 N.Y.S.2d 240 (1975) (same).

Thus, we are convinced that the New York courts would reject the argument that, by failing to raise the issue on direct appeal, Silverstein forfeited or waived his right to contest his competence to stand trial.[11] Indeed, citing *Pate v. Rob-*

---

11. Thus, even if our interpretation of Justice Goldfluss's ruling, *infra,* were incorrect and he had denied relief on the basis of a finding of procedural default, this finding would not be dispositive in a federal habeas proceeding. As noted above, *Wainwright* invoked the "well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." *Id.* 433 U.S. at 81, 97 S.Ct. at 2503 (citations omitted). However, this immunity is not absolute, in either the substantive or the procedural context. For it is equally

well established that a state may not, in an attempt to deprive a litigant of the right to a hearing on a federal claim, manipulate its findings of law, *see Fairfax's Devisee v. Hunter's Lessee,* 11 U.S. (7 Cranch) 379, 3 L.Ed. 453 (1813), (overruling Virginia Supreme Court finding of law that an inquest of office was not necessary to vest land in the Commonwealth), or fact, *see Summer v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Maxwell v. Sumner,* 673 F.2d 1031, 1035–36 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). Thus, an unsup-

*inson,* the New York Court of Appeals has held that neither the failure to object at trial to inadequacies in the determination of competency nor the failure even to raise the issue at trial will bar the defendant from raising the issue for the first time on appeal. *People v. Armlin, supra,* 37 N.Y.2d at 170–72, 371 N.Y.S.2d 691, 332 N.E.2d 870; *People v. Bangert,* 22 N.Y.2d 799, 800, 292 N.Y.S.2d 900, 239 N.E.2d 644 (1968). Thus, if the trial court has been alerted to the defendant's mental problems and fails to order a hearing on competence, the conviction will be set aside on collateral review, even though the defendant failed to challenge his competence at trial, failed to request a competency hearing, and failed to appeal the issue. *People v. Freyre,* 76 Misc.2d 210, 348 N.Y.S.2d 845 (Sup.Ct.1973).

### C.

■ Finally, we believe that the state court denied collateral relief on the mistaken ground that the question of competence had already been fully litigated, rather than the ground that Silverstein had not appealed on the basis of his incompetence.[12] The state court's terse opinion in the first Article 440 proceeding simply notes that all of the issues raised in Silverstein's petition "have already been determined by the Appellate Division." In ruling on the second Article 440 proceeding, the state court was more explicit: As to the claim that the petitioner "was mentally incompetent at all times," Justice Goldfluss noted that the "underlying rationale in [Silverstein's direct appeal,] which was clearly brought to the attention of the Appellate Division, is that the defendant is retarded." Thus, "[t]here is nothing new or novel [in the petition] that hasn't been brought to the attention of . . . the Appellate Division. Consequently, the application and the motion made *pro se* is denied."

■ These remarks indicate that the state court denied Silverstein's motion to vacate his conviction under N.Y.Crim. Proc.Law § 440.10(2)(a) (McKinney 1971), which requires the court to deny relief when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment." Erroneous or not, this ruling does not constitute a finding of procedural default that would bar federal consideration of Silverstein's claims. *Maxwell v. Sumner,* 673 F.2d 1031, 1034 (9th Cir.) (*Wainwright v. Sykes* inapplicable when state denies habeas relief on ground that petitioner's arguments had been rejected on appeal), *cert. denied,* —— U.S. ——, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982).

■ In sum, under *Wainwright,* Silverstein's failure to allege on direct appeal that he was incompetent does not bar federal habeas relief.[13] The New York courts did not, would not, and constitutionally could not find that Silverstein had waived his right to challenge his conviction on the ground that he was incompetent to stand trial.

---

ported or manipulative finding of procedural default would not constitute an adequate state ground barring federal habeas relief.

**12.** Because the evidence as to the state court's holding is entirely documentary, we are as competent to pass on this factual question as the district court. *Taylor v. Lombard,* 606 F.2d 371, 372 (2d Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980); *Jack Kahn Music v. Baldwin,* 604 F.2d 755, 758 (2d Cir.1979).

**13.** Even if *Wainwright v. Sykes* were applicable, we believe that petitioner would be entitled to a hearing as to the "cause" for his failure to raise the issue of competence on direct appeal. *See supra* note 3.

We also believe that the defendant could show adequate "prejudice" under *Wainwright.* The acceptance of petitioner's plea in the absence of a hearing to establish competence establishes prejudice in that it so infected the process "that the resulting conviction violates due process." *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982) (quoting *Henderson v. Kibbe,* 431 U.S. 145, 146–47, 97 S.Ct. 1730, 1732, 52 L.Ed.2d 203 (1973)). We believe that this "fundamental miscarriage of justice" meets the prejudice standard of *Wainwright v. Sykes. See United States v. Frady, supra,* 102 S.Ct. at 1596; *Engle v. Isaacs,* 456 U.S. 107, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982).

## IV.

We now turn to the merits of the petitioner's claim. We have held that the trial court must order a hearing when there is "reasonable ground" for believing that the defendant may be incompetent to stand trial. *United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir.), *cert. denied*, 408 U.S. 927, 92 S.Ct. 2512, 33 L.Ed.2d 340 (1972).[14] Recognizing that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975), we hold that in light of the undisputed facts, there were sufficient indicia of incompetence before the trial court to require a hearing. The state trial court had before it the reports of three psychiatrists. The mere fact that the last of these reports found the petitioner competent to stand trial did not suffice to settle the question, given that two psychiatrists had submitted contrary reports just a few days before.[15] The doctors' disagreement gave the trial court reasonable grounds for doubting that Silverstein was competent to stand trial. Moreover, this doubt could only have been reinforced by the presentence report noting Silverstein's long institutional history and earlier diagnoses finding him retarded and possibly schizophrenic. *Saddler v. United States*, 531 F.2d 83, 86–87 (2d Cir.1976). In these circumstances, the trial court's failure to order a hearing, *sua sponte* if necessary, violated the defendant's right to a fair trial. *Pate v. Robinson, supra,* 383 U.S. at 385, 86 S.Ct. at 842.

If the defendant were in fact incompetent at the time of trial, the acceptance of his plea would be void as a violation of due process. *Suggs v. LaVallee,* 570 F.2d 1092, 1116 (2d Cir.), *cert. denied,* 439 U.S. 915, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978). However, we doubt that a meaningful hearing on the question of the defendant's competence to stand trial at the time of his plea almost six years ago, on May 20, 1977 could be held at this late date. *See Drope v. Missouri, supra,* 420 U.S. at 183, 95 S.Ct. at 909 (adequate hearing not possible five years after conviction); *Pate v. Robinson, supra,* 383 U.S. at 387, 86 S.Ct. at 843 (likewise for six years after conviction). A retrospective determination of Silverstein's competence to stand trial would have to be based on three conflicting written reports, a cold, sparse record, and the recollection of those who saw and dealt with him six years ago. Such a hearing would be a wholly inadequate substitute for the "concurrent hearing" into competency mandated by *Pate. Pate, supra,* at 387, 86 S.Ct. at 843; *see Drope v. Missouri, supra; Dusky v. United States,* 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).[16] Accordingly, we reverse and direct the issuance of the writ of habeas corpus unless the state brings Silverstein to trial within a reasonable time.[17]

---

14. *See also Acosta v. Turner,* 666 F.2d 949, 954 (5th Cir.1982) (requiring a hearing when there is a "bona fide doubt" as to competency); *United States v. Hayes,* 589 F.2d 811, 823 (5th Cir.) ("substantial" doubt), *cert. denied,* 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979).

15. The Ninth Circuit reached a different conclusion in a case where the third psychiatric report finding the defendant competent to stand trial was based on interviews conducted five months after two psychiatrists had found the defendant incompetent. *United States v. Caplan,* 633 F.2d 534, 539–42 (9th Cir.1980). The defendant's status had apparently improved under interim psychiatric treatment. Because there was no other specific evidence of the defendant's alleged incompetence, the court of appeals held that it had not been an abuse of discretion not to conduct a competency hearing upon receipt of the third report.

16. *Cf. McCarthy v. United States,* 394 U.S. 459, 470, 89 S.Ct. 1166, 1172, 22 L.Ed.2d 418 (1969) (because of doubts about the voluntariness of defendant's guilty plea, the court set aside the conviction rather than order a hearing into voluntariness, holding that "[t]here is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him." (emphasis in original)).

17. We have not been in any way concerned with whether Silverstein may have been legally responsible for the crimes with which he has been charged. Consequently, nothing we have said is to be construed as an expression of opinion on that issue.