Larry ROLLINS, a/k/a Donald Beauchene, Petitioner,

v.

Arthur A. LEONARDO, Superintendent, Comstock Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.

No. 88 Civ. 7779 (LBS).

United States District Court, S.D. New York.

April 2, 1990.

Lawrence K. Feitell, New York City, for petitioner; Irwin Herschlag, of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for respondents; Tyrone M. Powell, Asst. Atty. Gen., of counsel.

### OPINION

SAND, District Judge.

Larry Rollins, a/k/a Donald Beauchene, petitions this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner argues that his right against self-incrimination under the fifth amendment and his right to counsel under the sixth amendment were violated when the trial court failed to suppress a confession obtained after a defective *Miranda* warning, that petitioner was denied effective assistance of counsel at trial, and that the trial court erred by not assessing petitioner's competence to stand trial. For the reasons stated below, Rollins' petition is denied.

### I. *Background*

On October 14, 1978, petitioner, a building superintendent's assistant and also evidently an escaped patient from a mental institution, painted the apartment of Paula Goldberg. According to Ms. Goldberg as petitioner was about to leave her apartment, he locked the door and started to punch her. After an extensive beating, Ms. Goldberg was raped and sodomized twice. Petitioner then offered to help Ms. Goldberg, telling her that he would call the police and inform them that he had saved her from her assailants.

When the police arrived, petitioner came out of the building, approached their car, and told the officers that a "young lady" in the building had just been beaten by two black men. Petitioner escorted Detective Reid and Officer Maczaj into the building and led them to the victim's apartment. At first Ms. Goldberg was unable to respond to the officers' questions, and each time the officers asked her what had happened, petitioner repeated his story about the two black men. When petitioner eventually was moved a few feet away from the victim, she jumped into Officer Maczaj's arms and identified the petitioner as her assailant.

Detective Reid immediately handcuffed petitioner and told him that he was under arrest for assault. Reid then advised petitioner that:

> he had the right to remain silent, the right to counsel, the right if he couldn't afford one, one would be provided for him, and that he didn't have to answer any questions unless he wanted.

Respondent's Supplemental Answer at 4. When Reid asked petitioner if had understood these warnings, petitioner did not respond.

Officer Maczaj then took petitioner into the hallway, asked him to identify himself, and asked if petitioner knew Ms. Goldberg. Petitioner replied that he did know her and that he was painting her apartment as an employee of the superintendent. When Maczaj asked petitioner if he had had an argument with Ms. Goldberg, petitioner answered "yes." Maczaj also asked if petitioner had beaten her, to which petitioner responded "yes, I did it."

Officer Maczaj, using a printed form, then read petitioner his complete *Miranda* warnings. After each warning, Maczaj asked petitioner if he understood. Upon completion of his recitation, Officer Maczaj asked petitioner if he was willing to answer questions without an attorney present. Petitioner responded affirmatively, and the officer once again asked petitioner about the incident, and petitioner again admitted that he had beaten Ms. Goldberg.

On February 14, 1980, Justice Greenfield of the New York Supreme Court, after conducting a hearing, denied petitioner's motion to suppress the inculpatory statements obtained by Officer Maczaj at the victim's apartment. Petitioner had also apparently refused to authorize the state of Maine to release any of his records. That same day petitioner proceeded to his jury trial in Supreme Court, New York County. On February 22, 1980 the jury found him guilty of two counts of Rape in the First Degree, N.Y. Penal Law 130.35 (McKinney 1983); two counts of Sodomy in the First Degree, N.Y. Penal Law § 130.50 (McKinney 1983); and one count of Assault in the First Degree, N.Y. Penal Law § 120.10

(McKinney 1983). Petitioner was sentenced on April 16, 1980 to concurrent prison terms of from 8⅓ to 25 years on the Rape and Sodomy counts and 4 to 12 years on the Assault count. Three months after his conviction, petitioner was adjudicated mentally ill by a Maine superior court.

On October 14, 1982, petitioner, represented by new counsel, filed an appeal to the Appellate Division. In his appeal, petitioner claimed that the trial court had erred by not suppressing his statements after an improper *Miranda* warning, that he had not received a fair trial, and that he should be resentenced because there had not been a complete pre-sentence report and no psychiatric evaluation of the petitioner had been undertaken prior to sentencing. On March 13, 1984 the Appellate Division, First Department, affirmed petitioner's conviction. *People v. Rollins*, 99 A.D.2d 1032, 472 N.Y.S.2d 794 (1st Dept.1984). Leave to appeal to the Court of Appeals was denied on May 18, 1984.

On August 7, 1986, petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of New York. On October 22, 1987, the District Court dismissed the petition for failure to exhaust state remedies. On July 17, 1987, petitioner filed a motion to vacate judgment of his conviction pursuant to New York Criminal Procedure Law § 440.10 on the grounds that he was not afforded effective assistance of counsel and that his guilt was not established beyond a reasonable doubt. On September 23, 1987, Justice Greenfield, in a written decision, denied petitioner's motion. *People v. Rollins*, Indictment No. 4364/78, slip op. (Sup.Ct. N.Y. County Aug. 7, 1987). On July 7, 1987, the Appellate Division, First Department denied petitioner leave to appeal Justice Greenfield's decision.

## II. *Discussion*

■ Petitioner contends that the first set of *Miranda* warnings he received were improper. Specifically, he claims that he was never advised that anything he said could be used against him. Petitioner further argues that he never voluntarily waived his rights and that the officers should not have continued to question him after he failed to respond when asked if he understood the warnings.

We decline to decide whether Detective Reid's failure to advise petitioner that anything he said could be used against him rendered his confession inadmissible. Instead, we hold that the admission of the first confession, which followed an incomplete *Miranda* warning, was harmless beyond a reasonable doubt, whether or not the first confession was admissible. In *United States v. Tucker*, 415 F.2d 867, 869 (2d Cir.1969), *cert. denied*, 397 U.S. 955, 90 S.Ct. 986, 25 L.Ed.2d 139 (1970), the Second Circuit held that the admission of an allegedly unconstitutionally obtained confession, in light of the other evidence of a defendant's having committed a bank robbery, was harmless beyond a reasonable doubt. After declining to consider Tucker's many arguments that his confession was illegally obtained, the court concluded that the "overwhelming ... unchallenged and unimpeached" evidence which established Tucker's guilt, including an eyewitness identification of him by a bank employee, testimony of both of his accomplices who implicated him, and photographs of the robbery taken by a hidden movie camera that showed him committing the crime, was sufficient for the court to conclude under the facts in that particular case that any error was harmless beyond a reasonable doubt.

In the present case, Ms. Goldberg's detailed and convincing testimony establishing that Rollins had committed the crime and Rollins' admissible second confession is similarly overwhelming, unchallenged and unimpeached evidence of his guilt. As in *Tucker*, petitioner did not argue and could not establish that his confession was obtained through trickery or mental or physical coercion, as was the case in *Payne v. Arkansas*, 356 U.S. 560, 568, 78 S.Ct. 844, 850, 2 L.Ed.2d 975 (1958). Therefore, we conclude that the admission of Rollins' first confession was harmless beyond a reasonable doubt, whether or not its admission was an error.

We reject the argument that if petitioner's first confession was improperly ob-

tained, his second confession was tainted and therefore inadmissible. In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) the Supreme Court held that the Fifth Amendment does not require the suppression of a confession solely because the police had obtained an earlier unwarned confession, as long as the unwarned confession was not the product of coercion. In *Elstad*, the defendant was arrested on burglary charges and made an incriminating statement without having received *Miranda* warnings when police visited him at his home. After being taken to the station house, the defendant was advised of his *Miranda* rights, waived them and proceeded to confess. The Court held that "a careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible." *Id.* at 310–11, 105 S.Ct. at 1293–94. The case before the Court differs from *Elstad* only in that an incomplete warning was given before the first confession was obtained and a longer period of time elapsed between the two confessions.[1]

In *Bryant v. Vose*, 785 F.2d 364 (1st Cir.) *cert. denied*, 477 U.S. 907, 106 S.Ct. 3281, 91 L.Ed.2d 570 (1986), the First Circuit, citing *Elstad*, held that a voluntary oral confession obtained after a partial *Miranda* warning did not preclude the admission of a second written confession obtained after full *Miranda* warnings. In *Bryant*, a suspect in a homicide investigation was visited by the local police chief at his home, and before he confessed, was told "that he did not have to talk and that anything he said could be used against you." *Id.* at 366. Bryant was then taken to the police station, given proper *Miranda* warnings, and signed a written confession. The Court found that Bryant's first confession was given voluntarily, and held that the second confession, which was the product of proper warnings and was voluntarily given, was admissible.

In the present case, Rollins was given a partial *Miranda* warning and subsequently confessed. He was then taken into the hallway and given proper *Miranda* warnings, and he confessed again. Since we do not read *Elstad* and *Bryant* as suggesting that the length of time between the two confessions was a factor in the Courts' decisions, we hold that petitioner's first confession did not taint his second confession if both confessions were voluntary.

We turn our consideration to the voluntariness of the confessions. Whether a confession is voluntary turns on the "totality of the surrounding circumstances." *Green v. Scully*, 850 F.2d 894, 901 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988). In applying this test a court must take into consideration the characteristics of the accused, the conditions of interrogation, and the conduct of the law enforcement officials. The relevant characteristics of the person who confessed are his experience and background, together with his lack of education or intelligence. The second circumstance, the conditions of interrogation, include the place and length of interrogation. The final circumstance is the police officer's conduct. Facts bearing on this conduct include the repeated and prolonged nature of the questioning, whether there was any physical abuse of the suspect, the period of restraint in handcuffs, and whether any psychologically coercive tactics were used. *See Green*, 850 F.2d at 902.

After evaluating these factors in the present case, we hold that the petitioner confessed voluntarily. Petitioner, a 36 year-old man, has had some previous experience with the criminal justice system by virtue of his Maine arrest for homicide. In addition, there is nothing in the record which suggests a lack of intelligence on the part of the petitioner. Petitioner was briefly interrogated by Maczaj in the hallway of

---

1. An incomplete *Miranda* warning before the first of two confessions, as opposed to no warning at all, is arguably more likely to lead an informed and alert suspect to confess again, for he might be more likely to believe that he has already given the interrogator an admissible confession and has nothing to gain by remaining silent. Along similar lines, a longer period of time elapsing between an illegally obtained confession and a properly obtained one might give a suspect more time to consider the actual impact of his first confession.

the apartment building. There is nothing in the record that suggests that these conditions were coercive in nature or that the police officer attempted to trick, deceive or in any way improperly coerce petitioner. Petitioner does not maintain that the failure to advise him at first that what he said could be used against him was anything more than an inadvertent omission. In point of fact, nothing in the record suggests that the officers did anything besides restrain the suspect and calmly ask him a series of short questions, after advising him of his right not to answer them. Thus, we conclude based on an examination of the petitioner's characteristics, the conditions of interrogation, and the officers' conduct that petitioner's confessions were voluntary, and his second confession was therefore properly admitted by the trial court.

■ In his second claim petitioner asserts that he was not afforded effective assistance by his trial counsel. We conclude that habeas review of petitioner's ineffective assistance of counsel claim is barred because the New York Supreme Court "clearly and expressly" stated that its judgment rested on a properly applied state procedural bar. In *Arce v. Smith*, 889 F.2d 1271 (2d Cir.1989), Arce's conviction was affirmed by the New York Appellate Division and the New York Court of Appeals, after the courts had rejected his claims of prosecutorial misconduct and insufficiency of the evidence. Arce then filed a petition in state court pursuant to Article 440 of the New York Criminal Procedure Law seeking to vacate judgment of his conviction and raising his claim of ineffective assistance of counsel for the first time. The New York Supreme Court denied Arce's claim on the grounds that he had waived it by failing to raise it on direct appeal. After a federal district court dismissed Arce's petition for a writ of habeas corpus on the grounds that he could not show any excuse for his procedural default, the Second Circuit affirmed, finding that "federal habeas review is precluded when the 'last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedur-

al bar.'" *Arce*, 889 F.2d at 1273, (quoting *Harris v. Reed*, —— U.S. ——, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989)).

Petitioner, like Arce, first presented his ineffective assistance of counsel claim in his Article 440 petition, but failed to raise it on his direct appeal. The New York Supreme Court denied Rollins' petition on procedural grounds, stating that this claim "was a matter of record before the Appellate Court." *People v. Rollins*, No. 4364/78, slip op. at 2, (Sup.Ct. N.Y. County Aug. 7, 1987). Moreover, petitioner has not argued and the Court sees no basis for concluding that petitioner could establish cause and prejudice. Petitioner was afforded new counsel for purposes of his initial appeal to the Appellate Division, and he does not suggest that the record before the Appellate Division was in any way inadequate for addressing the ineffective assistance claim.

■ In his third claim petitioner contends that his competence to stand trial was never assessed by the trial court. The Supreme Court has held that due process requires that "a person whose mental condition is such that he lacks the capacity to understand the nature and the object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975). A trial court must order a hearing *sua sponte* when there is "a 'reasonable ground' for believing that the defendant may be incompetent to stand trial." *Silverstein v. Henderson*, 706 F.2d 361, 368 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

■ Under federal law, the failure to conduct a full competency hearing is not ground for reversal when the defendant appears competent during trial, *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986), *cert. denied*, 479 U.S. 1036, 107 S.Ct. 888, 93 L.Ed.2d 841 (1987) (citing *United States v. Dunn*, 594 F.2d 1367, 1372 (10th Cir.1979), *cert. denied*, 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979)),

and a trial court's examination of a defendant's competency is limited to an evaluation of defendant's abilities at time of trial. *Vamos*, 797 F.2d at 1150. Under New York law, a trial court need not order a competency hearing when it is satisfied "from the available information that there is no proper basis for questioning the defendant's sanity." *People v. Armlin*, 37 N.Y.2d 167, 171, 371 N.Y.S.2d 691, 332 N.E.2d 870 (1975). This is the case even when the defendant has "a history of mental problems." *People v. Sterling*, 72 A.D.2d 611, 613, 421 N.Y.S.2d 121, 122 (2d Dep't 1979).

The strongest argument in petitioner's favor is that facts within the trial court's knowledge were sufficient for the court to have concluded that petitioner's competency was in question. At the time he committed the offenses and at the time of trial, petitioner was an escapee from a state mental hospital in Maine. Petitioner also points out that he was adjudicated mentally ill by the Maine Superior Court three months after the trial in New York commenced.

In his August 7, 1987 decision denying petitioner's motion to vacate judgment, Justice Greenfield noted that petitioner had attempted to raise the question of mental capacity. In responding to petitioner's argument, Justice Greenfield described his observations with respect to petitioner's competency as follows:

> There was no indication in the proceedings before the court the defendant lacked the capacity to assist in his defense. He in fact, took the stand and testified that far from being the attacker, he had actually come to the rescue of the complainant (sic) who unaccountably accused him. There was no indication of any mental infirmity as he attempted to interpose this defense ... this court concluded that defendant was mentally fit to stand trial, and in attempting to shift the blame ... he indicated a craftiness and guile which belied his present claim of incapacity.

*People v. Rollins*, slip op. at 2–3, (Sup.Ct. N.Y. County Aug. 7, 1987). Justice Greenfield's findings were based upon what was obviously a careful examination of petitioner's behavior. Under 28 U.S.C. § 2254(d) a federal habeas court must give deference to the findings of a state court and must presume that these findings are correct unless they lack "fair support" in the state record. 28 U.S.C. § 2254(d); *See also Maggio v. Fulford*, 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983). As trial judge, Justice Greenfield was in a unique position to make such an evaluation, and this Court finds no basis for disturbing his findings.

That petitioner was adjudicated mentally ill by the Maine Superior Court three months after his trial is not dispositive of his competence to stand trial in New York three months earlier. The Court also presumes that Justice Greenfield weighed the probative value of petitioner's status as an escaped mental patient against his personal observations of petitioner's ability to conduct his affairs in reaching his conclusion concerning petitioner's competence.

This case differs from *Silverstein v. Henderson*, 706 F.2d at 369, where the Second Circuit found that the trial court's failure to order a competency hearing violated the defendant's right to a fair trial. In *Silverstein*, in addition to the observations in the presentence report that the defendant had a long history of institutionalization and had been diagnosed earlier as both retarded and possibly schizophrenic, the trial court was presented with the reports of three psychiatrists, two of which concluded that he was not competent to stand trial. *Id.* Here, in contrast, all the trial court was told was that petitioner had escaped from a Maine mental institution. Moreover, the absence of additional evidence no doubt stemmed at least in part from petitioner's refusal to authorize the state of Maine to release his records. The Court concludes that Justice Greenfield sufficiently informed himself of facts from which he could conclude that petitioner had the capacity to understand the nature and the object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.

### III. *Conclusion*

For the foregoing reasons, Rollins' petition for a writ of habeas corpus is denied. The Court finds probable cause for an appeal.

SO ORDERED.