Trevis JOHNSON, Petitioner,

v.

John KEANE, Superintendent of Sing
Sing Correctional Facility,
Respondent.

No. 96 Civ. 2886 LAP.

United States District Court,
S.D. New York.

July 1, 1997

As Corrected Oct. 10, 1997.

Paul Skip Laisure, New York City, for petitioner.

Robert W. Ottinger, Asst. Attorney General, State of N.Y., New York City, for respondent.

## MEMORANDUM AND ORDER

PRESKA, District Judge.

Petitioner Trevis Johnson ("Johnson") petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Magistrate Judge Peck filed a Report and Recommendation recommending that Johnson's habeas corpus petition be granted. After reviewing the report de novo, pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(c), I adopt the Report and Recommendation in its entirety and grant the petition.

## BACKGROUND

### The Evidence at Trial as to the Robberies

On February 20, 1990, Johnson, wielding a knife, (Tr. 50–54),[1] approached Ramesh Dwivedi in the Times Square subway station and asked for a dollar. (Tr. 48–51, 55.) Dwivedi was too slow in producing the money, so Johnson reached into Dwivedi's wallet and removed $240. (Tr. 50, 55.) Six days later, on February 26, Dwivedi saw Johnson being arrested in the same station (Tr. 59, 61–63), and reported to the police that Johnson was the man who had robbed him. (Tr. 63–64.)

Johnson's second victim was Vijaypraksh Hasare. Hasare testified that on February 26, 1990, Johnson approached him and demanded a dollar. (Tr. 24–25, 27–29.) Johnson did not succeed in obtaining any money, however, because other people came down the ramp where the two were standing. (Tr. 24–26, 30, 39–40.) Johnson attempted to escape, but was apprehended by the police, (Tr. 32–33, 42), after Hasare reported the incident. (Tr. 30–32.)

At trial, defense counsel argued that the Hasare incident was merely an "aggressive panhandle," (Tr. 167–68), and that Dwivedi misidentified Johnson as his assailant. (Tr. 169–70.) On October 19, 1990, a New York Supreme Court jury found Johnson guilty of robbery in the first degree and attempted robbery in the third degree. (Tr. 237–38.) The trial court sentenced Johnson as a predicate offender to concurrent terms of 12½ to 25 years and one and a half to three years

imprisonment. (Sentencing Tr., 1/14/91, at 7–8; *see also* Petition ¶¶ 2–3.)

### Mental Incompetence Hearings and Motions

In June, 1990, Johnson was examined by two psychiatrists to determine his competency to stand trial, pursuant to New York Criminal Procedure Law § 730. (Petition Ex. B: 7/11/90 Examination Reports of Dr. Melvin Weiderlight and Dr. P. Kennedy Walsh.) While both doctors agreed that Johnson appeared competent, Dr. Walsh warned that Johnson "has a chronic history of psychiatric illness which could deteriorate at any time." (Petition Ex. B: Walsh Report at 3.)

On August 6, 1990, Johnson's counsel moved to have Johnson re-examined (Petition Ex. A: 8/6/90 Hearing Tr. at 3), despite Johnson's vehement protests that no examination was necessary. (*Id.*) The court did not rule on the motion, but held a conference two days later, on August 8. At that conference, Johnson's new counsel, Robin Frankel, opined that Johnson was competent to stand trial. (Petition Ex. A: 8/8/90 Hearing Tr. at 3–4.) She did note that she would like to meet with an outside expert and perhaps have her client re-examined, but then commented that such a re-examination would not be necessary for the purposes of CPL § 730. (*Id.* at 4.) Trial was scheduled for September 11, 1990 (*Id.* at 5), but the case was adjourned until October after being transferred to Justice Clifford Scott. (Petition Ex. A: 9/25/90 Hearing Tr. at 1–3.)

Johnson's counsel came to believe that Johnson was no longer able to assist in his defense, and on October 16, 1990, requested a further CPL § 730 examination. (Petition Ex. A: 10/16/90 Hearing Tr. at 84–85.) Legal Aid's mental hygiene unit, which had met with Johnson, agreed with counsel's assessment. (*Id.* at 84.) Counsel also pointed out that Johnson had refused to be examined by Dr. Goldstein, a psychiatrist retained by the defense. (*Id.*) The trial court denied the request for the CPL § 730 examination, stating that Johnson had already been found competent the previous June. (*Id.* at 85.)

---

1. "Tr" refers to trial transcript.

The court set trial for the following day. (*Id.*)

Defense counsel again requested a CPL examination on October 17, 1990, stating that Johnson "lacked the ability to cooperate with counsel" and "has been found unfit in the past" because of his tendency to "shut down" when questioned by counsel. (Petition Ex. A: 10/17/90 Hearing Tr. at 2.) The court did not allow defense counsel an opportunity to explain Johnson's history of psychiatric hospitalization, and refused to comply with counsel's request that the court question Johnson to evaluate his competency. (*Id.* at 3–4.) Johnson's August 6 claim that he was competent apparently was used by the court to justify the denial of defense counsel's request. (*Id.* at 5.) The court stated, however, that its ruling would not change, even if Johnson were to consent to an examination. (*Id.*) Evidently, the trial court was unaware of its power to order a re-examination once the defendant has been found competent.[2]

Defense counsel informed the court on October 18, 1990, that Johnson intended to wear to trial the black striped shirt which was identified by the witnesses and police officers as belonging to the perpetrator. (Petition Ex. A: 10/18/90 Hearing Tr. at 2–3.) Johnson realized that wearing the shirt would likely result in a conviction. (*Id.* at 3.) Defense counsel tried to persuade the court that this demonstrated Johnson's inability to assist in his own defense; however, the court again refused to hold an examination, and brought the jury in. (*Id.*)

On October 19, 1990, at the close of the People's case, defense counsel stated, outside the presence of the jury, that Johnson "cannot assist me in his defense. He is speaking irrationally about having me obtain the folder for his mental psychiatric record. He does not understand what is going on. . . . He is not responsive in any rational way." (Tr. 136–67.) The court did not respond beyond stating "All right, noted." (Tr. 137.)

Dr. Goldstein examined Johnson on October 22, 1990. He found Johnson to be "delusional," and was prepared to testify as to his findings. (Tr. 138–39.) The report, which was not reviewed by the court, stated that Johnson was not fit to stand trial. (Petition Ex. C: 10/29/90 Report of Dr. Robert L. Goldstein, at 5.) The report noted Johnson's "longstanding history of psychiatric illness dating back to adolescence," *id.* at 2, and that Johnson was convinced that the complaining witnesses, who are Indian, were conspiring with Indian psychiatrists against whom Johnson allegedly has a malpractice case. (*Id.* at 3; *see also* Tr. 140.) Dr. Goldstein concluded that Johnson's

> communications with his attorney reflect these paranoid delusional ideas and interfere with any rational or effective collaboration with counsel in the preparation or implementation of a defense. He is unable to consider his alternatives or options in a rational light or to make realistic decisions. His judgment and grasp of reality are severely compromised.

(Petition Ex. C: Goldstein Report at 3–4.)

The same day, before the jury was brought in, defense counsel moved again for a CPL § 730 examination. (Tr. 138.) Once again,

---

2. MR. BUTCHEN (Legal Aid): Bottom line is we want a 730.
THE COURT: You show me authority where I can find him unfit on my own.
MS. FRANKEL: Do you want to ask him a few questions?
THE COURT: No, I am not a medical man. I have some degree—
MS. FRANKEL: We don't want you to find him unfit. I just want another 730 exam.
THE COURT: Why should I submit him to another one when he has been found fit?

. . . . .

MR. BUTCHEN: You can be found unfit at a later stage.
THE COURT: That doesn't make any difference. You made a record.

MS. FRANKEL: I think he is unfit now. Perhaps, you can ask him some questions.
THE COURT: What difference would it make.
MS. FRANKEL: You yourself may think that there is something wrong with the man.
THE COURT: Something wrong with all of us.

. . . . .

MS. FRANKEL: On the record, would you to consent [sic] to a § 730?
THE COURT: It wouldn't make any difference if he consented to it. What are you going to do, change the law of the State of New York? I don't need all that business. You can't do it. (Petition Ex. A: 10/17/90 Hearing Tr. at 3–5.)

the court denied the motion, holding that it was "too late" and that "[w]e all are" delusional. (*Id.*) The court did not accept defense counsel's argument that CPL § 730 provides for an examination at any point during the proceedings. (*Id.*) Rather, the court stated that "[w]e have had him submitted for § 730 before, and at some point this has to end. We cannot go on ad infinitum." (Tr. 139.)

Defense counsel again sought a psychiatric examination after the jury found Johnson guilty, and the court again denied the request. (Tr. 239.) The court did, however, state that it would recommend treatment and examination "through the Department of Corrections, if they deem it necessary." (*Id.*)

On November 19, 1990, defense counsel made a written motion to set aside the verdict pursuant to CPL § 330.30,[3] because of the court's repeated denials of the 730 examinations. (Petition Ex. C: Notice of Motion and Frankel Affirmation.) Dr. Goldstein's report finding Johnson unfit to stand trial was submitted as part of the motion. (*Id.*) The motion also included the recommendation of the Probation Department's psychiatric clinic that Johnson receive "closely monitored psychiatric treatment." (*Id.*: Frankel Affirmation ¶ 11.) On December 19, 1990, the trial judge denied the motion, holding that Johnson "does not have the medical evidence to support defense counsel's theory." (Petition Ex. D.)

On January 4, 1991, Johnson was sentenced to 12½ to 25 years as a predicate felon. (Sentencing Tr. at 7.) Defense counsel, in an effort to have the sentence reduced, again brought to the court's attention Johnson's "obvious mental incapacity to aid and assist [counsel] in his defense." (*Id.* at 2.) The court still refused to consider Johnson's competency, but did recommend that Johnson receive psychiatric treatment while serving his sentence. (*Id.* at 8.)

**3.** CPL § 330.30 provides that:
At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:

### Johnson's State Court Appeal

The First Department denied Johnson's appeal. *People v. Johnson*, 208 A.D.2d 456, 617 N.Y.S.2d 313 (1st Dep't 1994). The appellate court held that the trial judge properly exercised his discretion in not granting a second competency hearing, in light of the June report finding Johnson fit to stand trial. (*Id.*) The New York Court of Appeals denied leave to appeal. *People v. Johnson*, 85 N.Y.2d 863, 624 N.Y.S.2d 382, 648 N.E.2d 802 (1995).

### Johnson's Present Federal Habeas Petition

On April 19, 1996, the Office of the Appellate Defender filed the instant habeas petition on Johnson's behalf. (*See* Petition.) The Petition asserts that the conviction of a legally incompetent person violates the right to due process guaranteed by the Fifth and Fourteenth Amendments to the Constitution. (Petition ¶ 11.) Furthermore, the petition asserts, Johnson's right to due process was violated when the state court refused to hold a second competency hearing, despite the fact that a sufficient doubt was raised as to Johnson's fitness to stand trial. (*Id.*)

### DISCUSSION

### THE STATE COURT'S REFUSAL TO HOLD A SECOND COMPETENCY HEARING VIOLATED JOHNSON'S DUE PROCESS RIGHT TO A FAIR TRIAL.

#### A. The Applicable Law

Subjecting an incompetent person to trial is a violation of that person's constitutional right to due process. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Therefore, failure to hold a competency hearing when the evidence warrants one is unconstitutional. *See Nicks v. United States*, 955 F.2d 161, 167 (2d Cir.1992). Federal courts have granted habeas corpus petitions when trial courts failed to hold compe-

1. Any ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.

tency hearings despite evidence in the record sufficient to trigger the court's obligation to examine the defendant's fitness to stand trial. *See Pate,* 383 U.S. at 386, 86 S.Ct. at 842–43; *Silverstein v. Henderson,* 706 F.2d 361, 369 (2d Cir.1983), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

■ New York law defines an incompetent person as one who "as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y. CPL § 730.10(1). The inquiry is similar under federal law: "[W]hether the [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

■ New York Criminal Procedure Law § 730.30, which establishes the procedure for determining competency, provides that:

1. At any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held for the action of the grand jury, the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person.[4]

2. When the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the defendant is not an incapacitated person, the court may, on its own motion, conduct a

hearing to determine the issue of capacity, and it must conduct a hearing upon motion therefor by the defendant or by the district attorney.[5]

■ The New York Court of Appeals has maintained that it is the trial court's duty to hold a hearing, even in the absence of a request from the defendant, when the "demeanor of the defendant or other evidence raises doubts as to his competence to stand trial." *Silverstein v. Henderson,* 706 F.2d at 367 (citing *People v. Gonzalez,* 20 N.Y.2d 289, 293, 282 N.Y.S.2d 538, 229 N.E.2d 220 (1967)). A trial judge must order a hearing when evidence of incompetence creates a reasonable basis for believing that the defendant is not fit to stand trial. *See id.* at 369; *United States v. Nichols,* 56 F.3d 403, 414 (2d Cir.1995) ("[A] hearing is only required if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent.").[6]

■ The refusal to hold a competency hearing when the evidence suggests that such a hearing is necessary is a violation not only of state and federal statutes, but of the Due Process Clause as well. *See Nichols,* 56 F.3d at 416; *Nicks v. United States,* 955 F.2d 161, 168 (2d Cir.1992); *Hernandez v. Ylst,* 930 F.2d 714, 716 (9th Cir.1991); *United States v. Auen,* 846 F.2d 872, 877 (2d Cir. 1988). Absent a reasonable doubt of competency, however, a hearing is not required. *See, e.g., United States v. Kirsh,* 54 F.3d 1062, 1070 (2d Cir.1995).

■ The determination of whether there is reasonable cause to believe that the defendant is not fit to stand trial rests within the discretion of the trial judge. *See, e.g., Nichols,* 56 F.3d at 414. When the evidence

**4.** Although the wording is less than completely clear, the statute does cover *both* the period of time between arraignment upon a felony complaint and the action of the grand jury, *and* the period of time after arraignment upon an accusatory instrument other than a felony complaint and before sentencing.

**5.** CPL § 730.30(4) further states that "when the examination reports submitted to the court show that the psychiatric examiners are not unanimous in their opinion as to whether the defendant is or is not an incapacitated person … the court must conduct a hearing to determine the

issues of capacity…." *See Silverstein,* 706 F.2d at 367.

**6.** Petitioner points out that while "reasonable cause" is the phrase used by the Second Circuit, the constitutional standard may also be described as " 'sufficient doubt,' 'good faith doubt,' 'genuine doubt,' 'reasonable doubt,' and 'substantial question'…." (Petitioner's Mem. of Law in Support of Petition for Writ of Habeas Corpus at 4 n. 2.) (quoting *Blazak v. Ricketts,* 1 F.3d 891 (9th Cir.1993) (citations omitted)).

clearly warrants such an inquiry, however, the trial court "must necessarily exercise its discretion and make findings on the record concerning the defendant's competency." *Auen*, 846 F.2d at 877–78.

 The Supreme Court has not established firm guidelines for determining when a hearing is necessary. *See Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975). The Court has, however, delineated several factors which should be considered by the trial court: any evidence of the defendant's irrational behavior, the defendant's demeanor at trial, medical opinions, and the opinion of defense counsel. *See, e.g., id.* at 177 n. 13, 180, 95 S.Ct. at 906 n. 13. Upon review, an appellate court owes deference to the trial court's determinations, in recognition of the trial court's superior opportunity to observe "the defendant during the [pretrial and trial] proceedings." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986); *see Nichols*, 56 F.3d at 414; *Kirsh*, 54 F.3d at 1070; *United States v. Oliver*, 626 F.2d 254, 259 (2d Cir.1980).

Defense counsel, of course, may be in an even better position than the trial judge to evaluate a defendant's capacity. Therefore, courts have repeatedly emphasized the importance of defense counsel's opinion in determining when circumstances call for a hearing. The Court of Appeals explained that "since competency involves an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings, failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence." *Vamos*, 797 F.2d at 1150; *see also Drope*, 420 U.S. at 177 n. 13, 95 S.Ct. at 906 n. 13 ("Although we do not, of course, suggest that courts must accept without question a lawyer's representation concerning the competence of his client ... an expressed doubt in that regard by one with 'the closest contact with the defendant' ... is unquestionably a factor which should be considered."); *United States v. Day*, 949 F.2d 973, 982 (8th Cir.1991); *Griffin v. Lockhart*, 935 F.2d 926, 930, 931 (8th Cir.1991); *Hernandez v. Ylst*, 930 F.2d at 718; *accord People v. Morgan*, 87 N.Y.2d 878, 880, 638 N.Y.S.2d

942, 662 N.E.2d 260 (1995); *People v. Gelikkaya*, 84 N.Y.2d 456, 460, 618 N.Y.S.2d 895, 643 N.E.2d 517 (1994).

The Supreme Court has determined that holding one competency hearing at the beginning of the proceedings may not satisfy the constitutional requirement that courts establish that the defendant is fit to stand trial. *Drope*, 420 U.S. at 182, 95 S.Ct. at 909 ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."); *see also United States v. Mason*, 52 F.3d 1286, 1292–93 (4th Cir.1995) (finding that defendant's suicide attempt after first phase of defendant's trial required court to hold competency hearing not only as to defendant's competence to continue trial but also as to his competence at already concluded first part of trial); *Auen*, 846 F.2d at 878; *United States v. Renfroe*, 825 F.2d 763, 766 (3d Cir.1987); *accord People v. Colon*, 128 A.D.2d 422, 512 N.Y.S.2d 809, 810 (1st Dep't 1987).

### B. *Application of the Law to Johnson's Facts*

 Applying the factors delineated by the Supreme Court to Johnson's case leads to the conclusion that the trial court should have ordered a second competency hearing. Defense counsel made crystal clear her opinion that Johnson was not fit to stand trial, by repeatedly requesting that the trial court order an examination. Counsel requested a CPL § 730 competency hearing on October 16, 1990, again on October 17, 1990, and for a third time on October 18, 1990, immediately prior to trial. (*See* pages 227–228, above.) During trial, counsel renewed the request for a fourth time at the close of the People's case on October 19, 1990, and made a fifth request on October 22, 1990; after the verdict, defense counsel made a sixth motion orally and a seventh motion (written) on November 19, 1990. (*See* pages 228–229, above.) Defense counsel made an eighth and final motion at sentencing on January 4, 1991. (*See* page 229, above.) The trial judge disregarded

defense counsel's strongly held opinion, and summarily denied each request.

Additionally, the need for a competency hearing was indicated by medical evaluations of Johnson. The June 1990 evaluation warned that "Johnson had a history of psychiatric illness which could deteriorate at any time." (Petition Ex. B: Walsh Report at 3.) By October 16, 1990, defense counsel determined that Johnson's condition had in fact deteriorated, and Legal Aid's mental hygiene unit concurred in this opinion. (Petition Ex. A: 10/16/90 Hearing Tr. at 84–85.) The court prevented defense counsel from describing Johnson's prior psychiatric hospitalization, and refused to question Johnson. (*Id.* at 3–4.) When defense counsel attempted to support the requests for a hearing with Dr. Goldstein's psychiatric report (which found him "delusional"), the court would not accept it, on the grounds that it was "too late" and that "[w]e all are" delusional. (Tr. 137–40; *see also* Petition Ex. C.) After trial, defense counsel's written motion included Dr. Goldstein's report, and noted that the Probation Department's psychiatric clinic recommended "closely monitored psychiatric treatment for" Johnson. (Petition Ex. C: Notice of Motion & Frankel Affirmation.) The court denied the motion in a one sentence opinion. (Petition Ex. D.)

Finally, the trial court refused to consider evidence of Johnson's irrational behavior and his demeanor at trial. Johnson insisted on wearing to trial the shirt he wore on the day of his arrest, even though he realized that doing so would be severely prejudicial to his defense. (Petition Ex. A: 10/18/90 Hearing Tr. at 2–3.) Furthermore, during trial, defense counsel twice informed the court that Johnson was "speaking irrationally" and was not able to follow the proceedings. (Tr. 136–37.)

▮ In addition to this evidence, the trial judge himself appeared to believe that Johnson was suffering from psychiatric troubles. He stated that he would recommend treatment and examination "through the Department of Correctional Services, if they deem it necessary." (Tr. 239.) At sentencing, the judge recommended "that this defendant be given some kind of psychiatric treatment if possible while he is incarcerated." (Sentencing Tr. at 8.) While there is a difference between mental illness and incompetence, strong evidence of the former certainly serves as reasonable grounds for evaluating the latter.

▮ Unquestionably, "it is within the discretion of the trial court to determine competency." (Gov't Br. at 8.) However, such a statement presupposes that the trial judge in fact exercises discretion (and understands that ordering a second hearing is within the scope of his authority). A trial court "must necessarily exercise its discretion and *make findings on the record* concerning the defendant's competency when the facts presented to the court warrant such an inquiry." *Auen,* 846 F.2d at 877–78 (emphasis added).

The evidence put forth by defense counsel provided the court with a "reasonable ground" for believing that Johnson may not have been fit to stand trial. The trial judge, however, declined even to question Johnson briefly. (Petition Ex. A: 10/17/90 Hearing Tr. at 3–4.) The trial judge never indicated that he was basing his decision on his observation of Johnson during trial. (*See* Johnson Br. at 8.) Furthermore, this is not a case where the judge has expressed a belief that the defendant's request for a hearing is a sham. *See, e.g., Maggio v. Fulford,* 462 U.S. 111, 116–17, 103 S.Ct. 2261, 2263–64, 76 L.Ed.2d 794 (1983). In sum, the record discloses no evidence that the trial judge ever exercised his discretion at all (*See* Johnson Br. at 13–17; Johnson Reply Br. at 2), or that he explicitly found Johnson competent to stand trial. (*See* Johnson Br. at 13 & n. 4.)

▮ The trial judge denied all of counsel's requests, apparently based on his belief that the June 1990 competency determination precluded any reevaluation of Johnson's fitness. (*See* Petition Ex. A: 10/17/90 Hearing Tr. at 3–5 ("Why should I submit him to another one when he has been found fit? ... What are you going to do, change the law of the State of New York?")) Contrary to this misinterpretation, both the case law and the New York Criminal Procedure Law state that a trial judge has the power to order a

competency hearing at any point in the proceedings, and direct the judge to do so whenever the evidence raises a reasonable doubt as to the defendant's competency, regardless of whether a hearing has been held previously. *See Drope,* 420 U.S. at 181, 95 S.Ct. at 908; *Mason,* 52 F.3d at 1292–93; *Silverstein,* 706 F.2d at 367 (citing *People v. Gonzalez,* 20 N.Y.2d 289, 282 N.Y.S.2d 538, 229 N.E.2d 220 (1967); *People v. Armlin,* 37 N.Y.2d 167, 371 N.Y.S.2d 691, 332 N.E.2d 870 (1975); *People v. Smyth,* 3 N.Y.2d 184, 164 N.Y.S.2d 737, 143 N.E.2d 922 (1957)).

Under all of these circumstances, the state trial judge committed constitutional error in refusing Johnson's counsel's requests for a second competency examination or hearing.

### C. *The Appropriate Relief*

Johnson's trial took place in October 1990, almost seven years ago. The Supreme Court and the Court of Appeals have recognized the "inherent difficulties of . . . a nunc pro tunc [psychiatric] determination" after a long passage of time. *See Drope,* 420 U.S. at 183, 95 S.Ct. at 909; *Pate,* 383 U.S. at 387, 86 S.Ct. at 843; *Griffin,* 935 F.2d at 931; *Silverstein,* 706 F.2d at 369. New York, however, "is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried." *Drope,* 420 U.S. at 183, 95 S.Ct. at 909.

### CONCLUSION

For the reasons set forth above, Johnson's petition for a writ of habeas corpus is granted.

SO ORDERED:

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge:

To the Honorable Loretta A. Preska, United States District Judge.

Trevis Johnson, who was convicted of robbery and attempted robbery in the Times Square subway station and sentenced to 12½ to 25 years imprisonment, petitions for a writ of habeas corpus. Johnson is represented by the Office of the Appellate Defender. Johnson's petition alleges that "the state trial court's failure to hold a hearing on Mr. Johnson's mental competence once a sufficient doubt as to competency was raised violated his due process right to a fair trial" under the Fifth and Fourteenth Amendments. (Petition, dated April 19, 1996, ¶ 11.)

For the reasons set forth below, I recommend that the Court grant Johnson's habeas corpus petition because the state trial judge deprived Johnson of his due process right to a fair trial by refusing to order a further competency examination of Johnson despite reasonable grounds to believe Johnson might have been incompetent to stand trial.

### *FACTS*

### *The Evidence at Trial as to the Robberies*

On February 20, 1990, at around 7:00 P.M., Ramesh Dwivedi was in the Times Square subway station when Johnson approached him and said " 'A dollar please.' " (Trial Transcript, dated 10/19/90 ["Tr."], 48–51, 55.) Johnson had a knife in his hand. (Tr. 50–54.) Johnson then said "I have no time. You don't know where your money is," put his hand into Dwivedi's pocket, took $240 from Dwivedi's wallet and gave the empty wallet back to Dwivedi (Tr. 50, 55–56, 58–59.) Dwivedi reported the robbery. (Tr. 59.)

On the afternoon of February 26, 1990, Dwivedi saw Johnson being arrested by the police in the same subway station. (Tr. 59, 61–63.) Dwivedi told the police that this was the man who had robbed him on February 20. (Tr. 63–64.) Dwivedi also told Johnson's other victim, Mr. Hasare, that Johnson had robbed him (Dwivedi) of $240. (Tr. 67–70.) Both Dwivedi and Hasare are Indian. (*E.g.,* Tr. 68–69, 71.)

Mr. Vijaypraksh Hasare testified that on the afternoon of February 26, 1990, he was in the 42nd Street subway station near the Port Authority Bus Terminal. (Tr. 23–24.) Johnson, who was "hiding" on a ramp, grabbed Hasare's coat, and said " 'Give me dollar, give me dollar.' " (Tr. 24–25, 27–29.) Johnson tried to reach in Hasare's pocket. (Tr. 29–30, 38.) When other people came down the ramp, Johnson took his hand off Hasare and walked along the ramp with him. (Tr. 24–26, 30.) Johnson did not get any money from Hasare. (Tr. 39–40.) Hasare told the

police what had happened. (Tr. 30 32.) Hasare and the police looked around the subway station for Johnson; when Johnson saw Hasare with the police, Johnson ran and the police chased him. (Tr. 32–33, 42.)

Johnson did not testify at trial. (*See* Tr 169.) In summation, defense counsel argued that as to Hasare, "what Mr. Johnson was doing at best was an aggressive panhandle," not a robbery. (Tr. 167–68.) Defense counsel argued that Dwivedi was robbed, but misidentified Johnson as the robber when he saw the police arrest Johnson for the Hasare incident in the same subway station six days later. (Tr. 169–70.)

The jury found Johnson guilty of robbery in the first degree and attempted robbery in the third degree. (Tr. 237–38.) The trial court sentenced Johnson as a predicate offender to concurrent terms of 12½ to 25 years and one and a half to three years imprisonment. (Sentencing Tr., 1/14/91, at 7–8; *see also* Petition ¶¶ 2–3.)

*Mental Incompetence Hearings and Motions*

Pursuant to Criminal Procedure Law § 730.30 (quoted on page 230 below), in June 1990 Johnson was examined by two psychiatrists to determine his competency to stand trial. (Petition Ex. B: 7/11/90 Examination Reports of Dr. Melvin Weiderlight and Dr. P. Kennedy Walsh.) Both psychiatrists concluded that Johnson was fit to stand trial, although Dr. Walsh also noted that Johnson "has a chronic history of psychiatric illness which could deteriorate at any time." (Petition Ex. B: Walsh Report at 3.)

On August 6, 1990, Johnson's then trial counsel moved to controvert the CPL § 730 reports and have Johnson re-examined. (Petition Ex. A: 8/6/90 Hearing Tr. at 3.) Johnson himself, however, stated on the record that he did not want to be re-examined:

THE DEFENDANT: They said I'm fit to proceed. I'm supposed to start a trial today. I'm all right. You're talking about something eight years ago, just by mistake. I just take medication, that ain't nothing. I want to go to trial.

(*Id.*) The trial court did not rule on the request, but held another conference a few days later.

At the time of the August 8, 1990 conference, the Legal Aid Society appointed a new lawyer, Ms. Robin Frankel, to represent Johnson because his original lawyer was leaving the Society. (Petition Ex. A: 8/8/90 Hearing Tr. at 2.) Ms. Frankel had "spent a long time" with Johnson that morning and felt that despite his history of mental illness, he was "fit to proceed in [terms of the] legal ramifications of … CPL § 730." (*Id.* at 3–4.) Ms. Frankel said she would "like to have an opportunity to discuss it with an expert outside of the Legal Aid Society, to hire an expert, and possibly have him examined," but also noted a minute later that she thought "it would also be futile to have another psychiatrist look at him under" CPL § 730. (*Id.* at 4.) The court scheduled trial for September 11, 1990. (*Id.* at 5.)

The case was transferred to Justice Clifford Scott, and trial was adjourned until October. (Petition Ex. A: 9/25/90 Hearing Tr. at 1–3.) On October 16, 1990, Johnson's counsel requested a further CPL § 730 examination. (Petition Ex. A: 10/16/90 Hearing Tr. at 84.) Counsel stated that she did not believe Johnson could assist in his defense. (*Id.* at 85.) Counsel noted that Legal Aid's mental hygiene unit had met with Johnson and "concurs with my belief that this defendant cannot assist [counsel] in this trial." (*Id.* at 84.) Johnson's counsel further stated that they had tried to have a psychiatrist, Dr. Goldstein, examine Johnson but Johnson had refused. (*Id.*) The trial court summarily denied the request, stating: "You made a record and I have denied the application for a § 730 examination. We had one before and found him fit." (*Id.* at 85.) The court set trial for the next day. (*Id.*)

On October 17, 1990, defense counsel again asked for a CPL § 730 examination, stating:

I have spoken to our client and he lacks the capacity to cooperate with counsel. He can be of no assistance to us.… When we confront him concerning the facts of the case he again shuts down. He really can be of no assistance at all. He has been found unfit in the past for this very reason.

(Petition Ex. A: 10/17/90 Hearing Tr. at 2.) When Johnson's counsel started to describe

Johnson's prior psychiatric hospitalization at Bellevue and other institutions, the court cut her off, saying "don't go into all that business. You asked for thirty seconds." (*Id.* at 3.) The trial court also declined defense counsel's request to ask Johnson questions. (*Id.* at 3–4.)[1] The trial court ruled that Johnson "gave us the solution" (*id.* at 5), apparently referring to Johnson's statement to the court at the August 6, 1990 hearing that he did not want another psychiatric examination. When counsel then asked Johnson if he would consent to such an examination now, the court said it would not make any difference. (*Id.*)

On October 18, 1990, just before trial was to begin, defense counsel informed the court that Johnson insisted on wearing to trial the black striped shirt which the witnesses and police officers identified as having been worn by the perpetrator. (Petition Ex. A: 10/18/90 Hearing Tr. at 2–3.) Johnson "agreed with [defense counsel] that by wearing the shirt he will get convicted because the perpetrator wore the black shirt." (*Id.* at 3.) Defense counsel explained that this showed that Johnson "is unable to rationally assist [her] in the defense of this case." (*Id.*) The court brought the jury in, implicitly denying defense counsel's indirect request for a psychiatric examination. (*Id.*)

At the close of the People's case on Friday, October 19, 1990, outside the presence of the jury, defense counsel stated that:

> "I still have the impression that Mr. Johnson cannot assist me in his defense. He is speaking irrationally about having me obtain the folder for his mental psychiatric record. He does not understand what is going on. I talk to him at every chance I get. He is not responsive in any rational way."

(Tr. 136–37.) The court's only response was "All right, noted." (Tr. 137.)

On Monday morning October 22, 1990, before the jury was brought in, defense counsel renewed her application for a CPL § 730

psychiatric examination. (Tr. 138.) Counsel stated that Dr. Goldstein had examined Johnson that morning, found him "delusional," and was prepared to testify about his findings. (Tr. 138–39.) The court said that was "too late," and that "[w]e all are" delusional. (*Id.*) Defense counsel pointed out that under CPL § 730, "at any point during the proceedings the Court has the authority to declare that the defendant is not fit." (*Id.*) The trial court again denied the request, stating:

> THE COURT: You had a chance to submit him. We have had him submitted for § 730 before, and at some point this has to end. We cannot go on ad infinitum. I gave you a chance. . . .

(Tr. 139.)

Dr. Goldstein's report, which was not reviewed by the court at that time, found Johnson unfit to stand trial. (Petition Ex. C: 10/29/90 Report of Dr. Robert L. Goldstein, at 5.) Dr. Goldstein's report noted that "Mr. Johnson has a longstanding history of psychiatric illness and hospitalizations dating back to adolescence." (*Id.* at 2.) He found Johnson to be delusional; Johnson believed that the Indian complaining witnesses were in a conspiracy with Indian psychiatrists against whom Johnson allegedly had a malpractice case. (*Id.* at 3; *see also* Tr. 140.) According to Dr. Goldstein, Johnson's

> communications with his attorney reflect these paranoid delusional ideas and interfere with any rational or effective collaboration with counsel in the preparation or implementation of a defense. He is unable to consider his alternatives or options in a rational light or to make realistic decisions. His judgment and grasp of reality are severely compromised.

(Petition Ex. C: Goldstein Report at 3–4.)

After the jury found Johnson guilty, his counsel again sought a psychiatric examination; the trial court again denied the request, and set a date for sentencing. (Tr. 239.) The trial court said he would recommend

---

1. MS. FRANKEL: I think he is unfit now. Perhaps, you can ask him some questions.
 THE COURT: What difference would it make?
 MS. FRANKEL: You yourself may feel there is something wrong with the man.

THE COURT: Something wrong with all of is. (*Id.* at 4.)

treatment and examination "through the Department of Correctional Services, if they deem it necessary." (*Id.*)

On November 19, 1990, defense counsel made a written motion to set aside the verdict pursuant to CPL § 330.30,[2] because of the court's prior denials of the oral CPL § 730 motions. (Petition Ex. C: Notice of Motion. and Frankel Affirmation.) As part of the motion, counsel submitted Dr. Goldstein's report finding Johnson unfit to stand trial. (*Id.*) The motion also noted that the Probation Department's psychiatric clinic recommended "closely monitored psychiatric treatment for" Johnson. (*Id.:* Frankel Affirmation ¶ 11.) By decision dated December 19, 1990, the trial judge denied the motion, stating, in full:

> This Court finds that the defense does not have the medical evidence to support defense counsel's theory, therefore, the motion is denied.

(Petition Ex. D.)

As noted above, on January 4, 1991, Johnson was sentenced as a predicate felon to 12½ to 25 years imprisonment. (Sentencing Tr. at 7.) In seeking a lesser sentence, defense counsel again raised "the defendant's obvious mental incapacity to aid and assist [counsel] in his defense." (*Id.* at 2.) The court stated that he "recommended that the defendant be given some kind of psychiatric treatment if possible while he's incarcerated." (*Id.* at 8.)

### Johnson's State Court Appeal

The First Department denied Johnson's appeal. *People v. Johnson,* 208 A.D.2d 456, 617 N.Y.S.2d 313 (1st Dep't 1994). As to the psychiatric examination and competency issue, the First Department held, in full:

> The trial court having observed defendant during trial, properly exercised its

discretion in denying defendant counsel's application for another competency hearing, especially in light of the examination several months previously, in which two psychiatrists found defendant fit to proceed to trial.

*Id.* On February 16, 1995, the New York Court of Appeals denied leave to appeal. *People v. Johnson,* 85 N.Y.2d 863, 624 N.Y.S.2d 382, 648 N.E.2d 802 (1995).

### Johnson's Present Federal Habeas Petition

On April 19, 1996, the Office of the Appellate Defender filed the instant habeas petition on Johnson's behalf. (*See* Petition.) The Petition asserts that "the conviction of an accused person who is legally incompetent to stand trial violates his due process rights" under the Fifth and Fourteenth Amendments to the Constitution. (Petition ¶ 11.) The Petition further asserts that "the state trial court's failure to hold a hearing on Mr. Johnson's mental competence once a sufficient doubt as to competency was raised violated his due process right to a fair trial." (*Id.*)

### ANALYSIS

### THE COURT SHOULD GRANT JOHNSON'S HABEAS CORPUS PETITION BECAUSE THE STATE TRIAL JUDGE'S FAILURE TO ORDER A FURTHER COMPETENCY EXAMINATION DEPRIVED JOHNSON OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL [3]

#### A. The Applicable Law

It is black letter law that subjecting a mentally incompetent defendant to trial vio-

---

**2.** CPL § 330.30 provides in pertinent part that

> At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:
> 1. Any ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.

**3.** Johnson's petition was filed on April 19, 1996, before the President signed the "Antiterrorism and Effective Death Penalty Act of 1996" (the "AEDPA") on April 24, 1996. Accordingly, this Report analyzes Johnson's petition under pre-AEDPA standards. *See Boria v. Keane,* 90 F.3d 36 (2d Cir.1996). In any event, the result would not be different under the AEDPA. For the reasons discussed in text, the trial judge's failure to grant Johnson's request for a further competence examination "resulted in a decision that was contrary to, or involved an unreasonable applica-

lates the defendant's due process rights. Indeed, the Supreme Court has explained that this right has been recognized since the time of *Blackstone's Commentaries:*

> It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial. Thus, Blackstone wrote that one who became 'mad' after the commission of an offense should not be arraigned for it 'because he is not able to plead to it with that advice and caution that he ought.' Similarly, if he became 'mad' after pleading, he should not be tried, 'for how can he make his defense?' 4 W. Blackstone Commentaries, *24.... [T]he prohibition is fundamental to an adversary system of justice....
>
> In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), we held that [a state's] failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.

*Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975); *accord, e.g., United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986). Since convicting an incompetent defendant is a fundamental constitutional error, "[i]t follows as a corollary that the failure to hold a required competency hearing deprives a defendant of his constitutional right to a fair trial and renders the conviction void." *Nicks v. United States*, 955 F.2d 161, 167, 168 (2d Cir. 1992); *accord, e.g., Griffin v. Lockhart*, 935 F.2d 926, 929 (8th Cir.1991). Accordingly, the federal courts have granted habeas corpus petitions where a potentially incompetent defendant was tried without a competence hearing. *E.g., Pate v. Robinson*, 383 U.S. 375, 386, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966); *Silverstein v. Henderson*, 706 F.2d 361, 369 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

Under New York law, an " '[i]ncapacitated person' means a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y. CPL § 730.10(1). Similarly, in federal court, in determining a defendant's competency to stand trial, the "test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960); *accord, e.g., United States v. Nichols*, 56 F.3d 403, 410, 412 (2d Cir.1995); *Hernandez v. Ylst*, 930 F.2d 714, 716 & n. 2 (9th Cir.1991); *United States v. Oliver*, 626 F.2d 254, 258 (2d Cir.1980); *Newfield v. United States*, 565 F.2d 203, 206 (2d Cir. 1977); *Mead v. Walker*, 839 F.Supp. 1030, 1033 (S.D.N.Y.1993) ("The state test for incompetency" under CPL § 730.10 "appears to parallel the federal one" set out in *Dusky* ). "The inquiry involves an assessment of whether the accused can assist 'in such ways as providing accounts of the facts, names of witnesses, etc.' ... But it is not sufficient merely that the defendant can make a recitation of the charges or the names of witnesses, for proper assistance in the defense requires an understanding that is 'rational as well as factual.' " *United States v. Hemsi*, 901 F.2d 293, 295 (2d Cir. 1990).

Criminal Procedure Law § 730 establishes the procedures by which New York courts determine whether a defendant is mentally competent to stand trial. *See Mead v. Walker*, 839 F.Supp. at 1034. Criminal Procedure Law § 730.30 provides in pertinent part that:

> 1. At any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held for the action of the grand jury, the court wherein

---

tion of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d) (as amended).

the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person.

2. When the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the defendant is not an incapacitated person, the court may, on its own motion, conduct a hearing to determine the issue of capacity, and it must conduct a hearing upon motion therefor by the defendant or by the district attorney. If no motion for a hearing is made, the criminal action against the defendant must proceed. If, following a hearing, the court is satisfied that the defendant is not an incapacitated person, the criminal action against him must proceed; if the court is not so satisfied, it must issue a further order of examination directing that the defendant be examined by different psychiatric examiners designated by the director.

A defendant being tried in federal court is afforded similar protection by 18 U.S.C. § 4241:

(a) **Motion to determine competency of defendant.**—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(b) **Psychiatric or psychological examination and report.**—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court. . . .

18 U.S.C. § 4241.

■ While there is some variation in the procedures used in the New York and federal courts,[4] the standard to be employed by the trial judge under New York or federal case law is the same. "[W]hen the demeanor of the defendant or other evidence raises doubt as to [the defendant's] competence to stand trial, it is the trial court's duty to order a hearing sua sponte." *Silverstein v. Henderson,* 706 F.2d at 367. Expressed another way, "the trial court must order a hearing when there is 'reasonable ground' for believing that the defendant may be incompetent to stand trial." *Id.* at 369; *accord, e.g., Pate v. Robinson,* 383 U.S. at 385, 86 S.Ct. at 842 (error for state trial court to have failed to hold a competence hearing where evidence of incompetence was presented); *United States v. Nichols,* 56 F.3d at 414 ("Neither ... 18 U.S.C. 4241 nor the Due Process Clause requires a hearing in every instance; a hearing is required only if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent."); *United States v. Kirsh,* 54 F.3d 1062, 1070 (2d Cir.1995); *Nicks v. United States,* 955 F.2d at 168; *Rollins v. Leonardo,* 733 F.Supp. 763, 767–68 (S.D.N.Y. 1990), *aff'd,* 938 F.2d 380, 382 (2d Cir.1991); *People v. Morgan,* 87 N.Y.2d 878, 880, 638 N.Y.S.2d 942, 943, 662 N.E.2d 260, 261 (1995); *People v. Armlin,* 37 N.Y.2d 167, 171, 371 N.Y.S.2d 691, 695, 332 N.E.2d 870, 873 (1975); *People v. Gonzalez,* 20 N.Y.2d 289, 293, 282 N.Y.S.2d 538, 541, 229 N.E.2d 220, 222 (1967); *People v. Smyth,* 3 N.Y.2d 184, 187, 164 N.Y.S.2d 737, 739, 143 N.E.2d 922, 923–24 (1957).

■ Conversely, of course, there is no requirement to order a competency examination or hearing if the trial court has not been given reasonable cause to believe that a defendant may be incompetent. *See, e.g., United States v. Kirsh,* 54 F.3d at 1070 ("the failure to conduct a full competency hearing is not a ground for reversal when the defen-

---

4. For example, in New York a psychiatric examination is required if the court believes the defendant may be incapacitated, while in federal court an examination before a competency hearing is discretionary. *Compare* N.Y. C.P.L. § 730.30(1) *with* 18 U.S.C. § 4241(a).

dant appeared to be competent during trial"); *Hernandez v. Ylst*, 930 F.2d at 716 & n. 3 ("A *Pate* hearing is not required, however, absent a 'substantial' or 'bona fide' doubt of competency."); *United States v. Vamos*, 797 F.2d at 1150; *United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir.1972) (competency hearing not mandated "if the evidence does not warrant one"); *Rollins v. Leonardo*, 733 F.Supp. at 768; *Dennis v. Turner*, 729 F.Supp. 15, 16 (S.D.N.Y.1990); *People v. Morgan*, 87 N.Y.2d at 880, 638 N.Y.S.2d at 943, 662 N.E.2d at 261; *People v. Armlin*, 37 N.Y.2d at 171, 371 N.Y.S.2d at 695, 332 N.E.2d at 873. Otherwise, the statute could be abused to provide an automatic continuance of the trial date at a defendant's request. *See, e.g., United States v. Hall*, 523 F.2d 665, 667 (2d Cir.1975).

The requirement that the trial judge determine whether a defendant is competent to stand trial if there is reasonable ground for believing the defendant incompetent is required not only by the New York and federal statutes, but also by the Constitution's due process clause. *E.g., United States v. Nichols*, 56 F.3d at 416; *Nicks v. United States*, 955 F.2d at 168 (citing *Pate v. Robinson*, 383 U.S. at 385, 86 S.Ct. at 842); *United States v. Day*, 949 F.2d 973, 982 (8th Cir.1991) ("The issue framed by *Pate* and *Drope* is not whether the defendant was competent to stand trial or plead guilty, but whether the absence of a hearing on the question of his competency amounted, in the circumstances of the case, to a denial of due process."); *Hernandez v. Ylst*, 930 F.2d at 716; *United States v. Auen*, 846 F.2d 872, 877 (2d Cir. 1988).

The determination of whether there is "reasonable cause" to believe a defendant may be incompetent rests in the discretion of the trial judge. *See, e.g., United States v. Nichols*, 56 F.3d at 414; *United States v. Vamos*, 797 F.2d at 1150; *Newfield v. United States*, 565 F.2d at 206; *People v. Morgan*, 87 N.Y.2d at 879, 638 N.Y.S.2d at 943, 662 N.E.2d at 261. For the procedural safeguards required by statute and Constitutional due process to be effective, however, the trial court "must necessarily exercise its discretion and make findings on the record concerning the defendant's competency where the facts presented to the court warrant such an inquiry." *United States v. Auen*, 846 F.2d at 877–78; *see also, e.g., United States v. Garrett*, 903 F.2d 1105, 1116 (7th Cir.1990).

The Supreme Court has recognized that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Drope v. Missouri*, 420 U.S. at 180, 95 S.Ct. at 908; *accord e.g., Silverstein v. Henderson*, 706 F.2d at 369. The Supreme Court, however, has recognized some of the factors that the trial court should consider: "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but even one of those factors standing alone may, in some circumstances, be sufficient." *Drope v. Missouri*, 420 U.S. at 180, 95 S.Ct. at 908; *see also, e.g., United States v. Nichols*, 56 F.3d at 411 ("In making a determination of competency, the [trial] court may rely on a member of factors, including medical opinion and the court's observation of the defendant's comportment."); *United States v. Day*, 949 F.2d at 982 (factors include "any evidence of [defendant's] irrational behavior, his demeanor before the trial court, available medical evaluations, and whether trial counsel questioned the defendant's competency before the court."); *United States v. Hemsi*, 901 F.2d at 295–96 ("the court may take account of a number of factors, including the defendant's comportment in the courtroom."); *People v. Morgan*, 87 N.Y.2d at 880–81, 638 N.Y.S.2d at 943–44, 662 N.E.2d at 261–62.

In addition, "deference is owed to the [trial] court's determinations based on observation of the defendant during the [pretrial and trial] proceedings." *United States v. Vamos*, 797 F.2d at 1150; *see also, e.g., United States v. Nichols*, 56 F.3d at 414; *United States v. Kirsh*, 54 F.3d at 1070 (trial court's "view of the defendant's competency based on its observations at trial is entitled to deference"); *United States v. Oliver*, 626 F.2d at 259 (trial judge "justifiably relied on his extended observations of [the defendant] in deciding that he had sufficient mental capacity to stand

trial"). This is especially so where the trial judge questions the defendant (outside the jury's presence) to explore defendant's competency. *See, e.g., United States v. Oliver,* 626 F.2d at 259; *People v. Russell,* 74 N.Y.2d 901, 902, 549 N.Y.S.2d 646, 647, 548 N.E.2d 1297, 1298 (1989) (trial judge's direct questioning of the defendant along with his overall ability to observe defendant at trial, supported finding of competence).

Defense counsel's opinion as to defendant's competence or incompetence also is an important factor to consider. As the Second Circuit has pointed out, "since competency involves an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings, failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence." *United States v. Vamos,* 797 F.2d at 1150. *See also, e.g., Drope v. Missouri,* 420 U.S. at 177 n. 13, 95 S.Ct. at 906 n. 13 ("Although we do not, of course, suggest that courts must accept without question a lawyer's representation concerning the competence of his client, ... an expressed doubt in that regard by one with 'the closest contact with the defendant' ... is unquestionably a factor which should be considered."); *United States v. Kirsh,* 54 F.3d at 1071 (quoting *Vamos*); *United States v. Day,* 949 F.2d at 982 (factors include "whether trial counsel questioned the defendant's competency before the court"); *Griffin v. Lockhart,* 935 F.2d at 930, 931; *Hernandez v. Ylst,* 930 F.2d at 718 ("While the opinion of [defendant's] counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings."); *United States v. Renfroe,* 825 F.2d 763, 767 (3d Cir.1987) ("Other factors [besides the factors listed in *Drope*] relevant to the [competency] determination may include an attorney's representation about his client's competency "); *United States ex rel. Roth v. Zelker,* 455 F.2d at 1108 (the "opinion of a defendant's attorney as to his ability to understand the nature of the proceedings and to cooperate in the preparation of his defense, is indeed significant and probative."); *People v. Morgan,* 87 N.Y.2d at 880, 638 N.Y.S.2d at 943–44, 662 N.E.2d at 261–62 (counsel's opinion is a factor but it

does not "serve as an automatic substitute for the court's statutory discretion"); *People v. Gelikkaya,* 84 N.Y.2d 456, 460, 618 N.Y.S.2d 895, 897, 643 N.E.2d 517, 519 (1994) (noting that "defense counsel ... was in the best position to assess defendant's capacity").

Finally, the Supreme Court has held that even when a defendant is deemed competent at the beginning of the case, a trial court must always be aware of circumstances pointing to a change in defendant's competency. *Drope v. Missouri,* 420 U.S. at 182, 95 S.Ct. at 908 ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."); *see also, e.g., United States v. Mason,* 52 F.3d 1286, 1292–93 (4th Cir.1995) (defendant's suicide attempt after first phase of defendant's trial required court to hold competency hearing not only as to defendant's competence to continue trial but also as to his competence at already concluded first part of trial); *United States v. Auen,* 846 F.2d at 878; *United States v. Renfroe,* 825 F.2d at 766 (because "statute permits motions to determine competency 'at any time after the commencement of prosecution for an offense and prior to the sentencing of the defendant ...,' [t]he request for a hearing to determine [defendant's] competency at trial was, therefore, timely and should have been addressed by the [trial] court."); *People v. Colon,* 128 A.D.2d 422, 423, 512 N.Y.S.2d 809, 810 (1st Dep't 1987).

### B. *Application of the Law to Johnson's Facts*

Johnson's counsel made repeated requests for a competency examination of Johnson. Johnson's counsel requested a CPL § 730 competency examination on October 16, 1990, again on October 17, 1990, and for a third time on October 18, 1990 just before trial was to begin. (*See* page 228, above.) During trial, counsel renewed the request for the fourth time at the close of the People's case on Friday, October 19, 1990, and made a fifth request on October 22, 1990; after the jury's guilty verdict, defense counsel made a sixth motion orally and a seventh motion, this time

in writing, on November 19, 1990. (*See* pages 228–229 above.) Defense counsel renewed the issue for the eighth time at the time of sentencing on January 4, 1991. (*See* page ——, above.) The trial judge denied each request summarily.

Defense counsel provided the trial court with "reasonable ground" for believing that Johnson may have been incompetent to stand trial. Johnson had a history of mental illness sufficient for the original trial judge to order a CPL § 730 examination in June 1990. While that examination found Johnson competent to stand trial at that time, it noted that "Johnson had a chronic history of psychiatric illness which could deteriorate at any time." (Petition Ex. B: Walsh Report at 3.) By October 16, 1990, defense counsel advised the new trial judge that she did not believe Johnson could assist in his defense and that Legal Aid's mental hygiene unit concurred. (Petition Ex. A: 10/16/90 Hearing Tr. at 84–85.) The trial court summarily denied the request, stating only that there had been a prior § 730 examination that found Johnson fit. (*Id.*) Counsel renewed her request the next day, detailing that she had spoken to Johnson, he lacked the capacity to assist the defense, he "shuts down" when asked about the case and has been found unfit in the past for this reason. (Petition Ex. A: 10/17/90 Hearing Tr. at 2.) The trial court prevented defense counsel from describing Johnson's prior psychiatric hospitalization, declined to question Johnson himself, and summarily denied the request. (*Id.* at 3–4.) The next day, defense counsel advised the trial court that Johnson insisted on wearing to trial the shirt he wore on the day he was arrested, even though he recognized that he would be convicted by doing so. (Petition Ex. A: 10/18/90 Hearing Tr. at 2–3.) The trial court ignored this implicit further request for a psychiatric examination. (*Id.*)

During trial defense counsel twice informed the trial judge that Johnson was "speaking irrationally" and was not able to understand what was going on. (Tr. 136–37.) When defense counsel proffered a psychiatric report conducted during trial that found Johnson "delusional," the trial court refused it, saying it was "too late" and that "[w]e all are" delusional. (Tr. 138–40; *see also* Petition Ex. C.)

After trial, defense counsel's written motion included Dr. Goldstein's psychiatric report finding Johnson unfit and noted that the Probation Department's psychiatric clinic recommended "closely monitored psychiatric treatment for" Johnson. (Petition Ex. C: Notice of Motion & Frankel Affirmation.) The trial court denied the motion in a one sentence opinion. (Petition Ex. D.)

Defense counsel's repeated requests here for a CPL § 730 examination make this case very different from cases where a defendant and his counsel are silent before and during trial and only raise the defendant's alleged incompetence on appeal or in a habeas proceeding. *Compare, e.g., Dennis v. Turner,* 729 F.Supp. at 16–17.

Defense counsel's statements, Johnson's irrational conduct (such as wearing to trial the shirt in which he was arrested), Johnson's history of psychiatric illness and the psychiatric evidence before the trial court clearly provided " 'reasonable ground' for believing that the defendant may be incompetent to stand trial." The trial court thus was required to order a psychiatric examination and/or hearing, at least absent countervailing factors such as the trial court's observation and/or questioning of the defendant during proceedings. Here, however, the trial judge declined to question Johnson. (Petition Ex. A: 10/17/90 Hearing Tr. at 3–4.) The trial judge never indicated that he was basing his decision on his observation of Johnson during trial. (*See* Johnson Br. at 8.) Nor is this a case where the trial judge believes the request for a psychiatric examination to be a sham interposed by the defense for delay or other improper tactical reasons. *Compare, e.g., Maggio v. Fulford,* 462 U.S. 111, 116–17, 103 S.Ct. 2261, 2263–64, 76 L.Ed.2d 794 (1983).

The government's opposition to Johnson's habeas petition principally relies on the argument that "it is within the discretion of the trial court to determine competency." (Gov't Br. at 8.) While the trial judge obviously has discretion, it is equally true that the trial court "must necessarily exercise its discretion and make findings on the record con-

cerning the defendant's competency when the facts presented to the court warrant such an inquiry." *United States v. Auen,* 846 F.2d at 877–78. There simply is no evidence that the trial judge here ever exercised his discretion. (*See, e.g.,* Johnson Br. at 13–17; Johnson Reply Br. at 2.) The trial judge never explicitly found Johnson competent to stand trial. (*See* Johnson Br. at 13 & n. 4.) The trial judge summarily denied all of the defense's requests, explaining only that they were "too late," that the examination 3–4 months before trial had found Johnson fit, and that there is "[s]omething wrong with all of us" and "we all are" delusional. (*E.g.,* Petition Ex. A: 10/16/90 Hearing Tr. at 85, 10/17/90 Hearing Tr. a: 3–4; Tr. 138–39.) It appears that the trial judge erroneously believed that because the June 1990 examinations found Johnson competent, the trial judge could not, or at least need not, reconsider the matter as time passed and circumstances changed. (*See* Johnson Br. at 13–17.) That is not the law. *See, e.g., Drope v. Missouri,* 420 U.S. at 181, 95 S.Ct. at 908; *United States v. Mason,* 52 F.3d at 1292–93.

Indeed, the trial judge himself appeared to have questions as to Johnson's competence. In setting a date for sentencing, the trial judge said he would recommend treatment and examination "through the Department of Correctional Services, if they deem it necessary." (Tr. 239.) And in sentencing Johnson, the trial judge "recommended that this defendant be given some kind of psychiatric treatment if possible while he is incarcerated." (Sentencing Tr. at 8.)

Under all of these circumstances, the state trial judge committed Constitutional error in refusing Johnson's counsel's request for a competency examination or hearing.

### C. *The Appropriate Relief*

Johnson's trial occurred in October 1990, over six years ago. The Supreme Court and the Second Circuit have recognized "the inherent difficulties of . . . a nunc pro tunc [psychiatric] determination" after a long passage of time. *E.g., Drope v. Missouri,* 420 U.S. at 183, 95 S.Ct. at 909; *Pate v. Robinson,* 383 U.S. at 387, 86 S.Ct. at 843 ("we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial," especially "six years after the fact"); *Griffin v. Lockhart,* 935 F.2d at 931; *Silverstein v. Henderson,* 706 F.2d at 369 (hearing six years after the fact "would be a wholly inadequate substitute for the 'concurrent hearing' into competency mandated by *Pate* "). Of course, "[t]he State is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried." *Drope v. Missouri,* 420 U.S. at 183, 95 S.Ct. at 909.

### CONCLUSION

For the reasons set forth above, I recommend that the Court grant Johnson's petition for a writ of habeas corpus.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 1320, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Preska. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

SO ORDERED.

DATED: New York, New York, November 26, 1996.